**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA
(Civil Division)**

| | |
|---|---|
| ALEX X. KERR ) <br> 8604 Brandt Place ) <br> Bethesda, Maryland 20814 ) <br> ) <br>       Plaintiff, ) <br> ) <br>       v. ) <br> ) <br> KIRSTJEN M. NIELSEN, Secretary, ) <br> U.S. Department of Homeland Security ) <br> 3801 Nebraska Avenue, N.W. ) <br> Washington, DC 20016 ) <br> ) <br> <u>Serve</u>:  Hon. Jeff Sessions, ) <br> Attorney General of the United States, or ) <br> c/o Designated Representative ) <br> United States Department of Justice ) <br> 950 Pennsylvania Avenue, N.W. ) <br> Washington, DC 20530-0001 ) <br> ) <br> <u>Serve</u>:  Hon. Jessica Liu, ) <br> U.S. Attorney for the District of Columbia, or ) <br> c/o Designated Representative ) <br> United States Attorney's Office ) <br> 555 Fourth Street, N.W. ) <br> Washington, DC 20530 ) <br> ) <br>       Defendant. ) <br>       _____ ) | Civil Action No.: _____ <br><br> **Jury Demanded** |

## **COMPLAINT**

**COMES NOW** the Plaintiff Alex X. Kerr, by and through undersigned counsel, and files suit against the named Defendant, and for cause of action states as follows:

## **INTRODUCTION**

1. Plaintiff Alex X. Kerr ("Plaintiff" or "Mr. Kerr") brings this civil action pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. § 2000e,

*et seq.*; and the Civil Rights Act of 1991, 42 U.S.C. § 1981a; for relief from discrimination based on race (African American), color (Black), engagement in prior EEO activity and a hostile work environment.

2. Defendant Kirstjen M. Nielsen ("Defendant" or "Secretary Nielsen") discriminated against Plaintiff on the basis of his race (African American), color (Black), engagement in prior EEO activity and subjected him to a hostile work environment during the course of his employment with the Department of Homeland Security, Citizenship and Immigration Services ("the Agency").

## JURISDICTION AND VENUE

3. This Court has jurisdiction pursuant to Title VII, as amended, 42 U.S.C. §§ 2000e-16, 2000e-5(f)(1) and (3). Further, this Court has jurisdiction over this Complaint because there is diversity of the parties and presents a question of federal law. 28 U.S.C. §§ 1331 (federal question) and 1332 (diversity).

4. Venue properly lies within this Court pursuant to 28 U.S.C. § 1391 and 42 U.S.C. § 2000e-5(f)(3). Secretary Nielsen is an officer of the Department of Homeland Security and oversees the Citizenship and Immigration Services, both of which are headquartered in the District of Columbia. Secretary Nielsen performs a significant amount of her official duties in the District of Columbia and resides, for the purposes of venue, within the District of Columbia. *See, e.g., Bartman v. Cheney*, 827 F.Supp. 1 (D.D.C. 1993) (holding that the Secretary of Defense resides in the District of Columbia for the purposes of 28 U.S.C. § 1391).

## PARTIES

5. Plaintiff is currently domiciled at 8604 Brandt Place, Bethesda, Maryland 20814. At all relevant times, Plaintiff was an employee of the Department of Homeland Security, Citizenship and Immigration Services. Plaintiff is a resident of Montgomery County, Maryland and a United States citizen.

6. Secretary Nielsen is being sued in her official capacity as the Secretary for the United States Department of Homeland Security.

7. Defendant is subject to suit for the negligent, discriminatory, wanton, willful or wrongful acts and/or omissions of employees or agents of Defendant; in addition, Defendant are the employer of persons who have committed negligent, discriminatory acts and/or omission against Plaintiff within the course and scope of their employment. Therefore, Defendant is liable pursuant to the doctrine of *Respondeat Superior*.

## EXHAUSTION OF REMEDIES

8. Plaintiff has exhausted all of his administrative remedies.

9. On or around June 3, 2016, Plaintiff timely contacted an EEO counselor and subsequently filed an informal and formal complaint of discrimination based on race and color.

10. On or around November 25, 2016, Plaintiff amended his formal complaint to add a claim of reprisal and a hostile work environment as well as additional adverse employment actions.

11. After the Agency issued a Notice of Right to File, dated August 17, 2016, Plaintiff timely filed a formal EEO complaint, on or around September 1, 2016, complaining of the discriminatory, harassing and retaliatory actions at issue herein.

12. After a Report of Investigation / Investigative File was completed on May 15, 2017, Plaintiff timely requested a hearing before the Equal Employment Opportunity Commission ("EEOC").

13. To date, the EEOC has not issued an Acknowledgment Order or an initial dispositive decision.

14. To date, the Agency has not issued a final decision.

15. Since 180 days from the date of filing his complaint has passed, Plaintiff now timely files this action pursuant to the 29 C.F.R. § 1614.408.

**FACTS**

16. Plaintiff incorporates all information and allegations contained in the preceding paragraphs as if fully set forth herein.

17. Mr. Kerr has been employed by the Agency since July 2011 as a Security Specialist, GS-0080-13, with the Department of Homeland Security, Citizenship and Immigration Services ("CIS") Division.

18. From 2015 to April 2016, Mr. Kerr's first level supervisor was Todd Minor (African American, Brown), while Mr. Minor was acting National Capital Region ("NCR") Security Branch Chief.

19. From April 2016 to the present, Mr. Kerr's first level supervisor has been Christopher Lewis (Caucasian, White), NCR Security Branch Chief, GS-14.

20. From April 2016 to the present, Mr. Kerr's second level supervisor has been Samuel Shebchuk (Caucasian, White), Field Security Division ("FSD") Deputy, GS-15.

21. Prior to being supervised by Mr. Lewis, Mr. Kerr has received positive comments on his performance appraisals, high ratings on his performance evaluations in recognition of his abilities and contributions to the Agency as well as a Letter of Appreciation.

22. In February 2016, the Agency issued a vacancy announcement (Number CIS-1631314-SEC), for two available Supervisory Security Specialist, GS-0080-14, positions in the Citizenship and Immigration Services, Office of Security and Integrity. One position was for the District of Columbia area and the other position was for a position in Vermont.

23. Per the announcement, Mr. Kerr was only permitted to apply to one of the available positions, so he applied to the District of Columbia position in February or March 2016.

24. Based on his resume, Mr. Kerr received a score of 100, was placed on the Best Qualified List and ultimately interviewed in April 2016.

25. The Agency ultimately filled the position with two lesser qualified individuals. Scott Dunford (Caucasian, White) filled the Vermont position, and Tinell Pratt filled the Washington, DC position.

26. Upon information and belief Tinell Pratt is a light-skinned African American, whom the Agency identified as White.

27. Of all the selectees, Mr. Kerr was the best qualified and had the most experience and education for the position. Among his superior qualifications, Mr. Kerr has substantial institutional knowledge, supervisory experience and has worked in the security field for over fifteen years.

28. The interview panel consisted of Samuel Shebchuk (Caucasian, White), Mark Clarke (Caucasian, White) and Benita Watson (African American, Brown).

29. Each of the interviews were in-person.

30. After the interviews were completed, the panel members subjectively scored each of the interviewees to arrive at a "consensus score" for each one.

31. With input from the panel members, Mark Clarke made the selection of the Selectee.

32. Upon information and belief, there has never been a dark-skinned African American who had supervisory authority in the Office of Security and Integrity ("OSI"), Field Security Division, National Capital Region.

33. Despite his dedication and wealth of experience, Mr. Kerr continues to watch less qualified Caucasian and White peers being provided preferential assignments and promoted above him.

34. In April 2016, Mr. Kerr was detailed to a position in the Physical Security Branch. This position provided opportunities for advancement and would have made Mr. Kerr even more competitive for future promotions.

35. During this detail, Mr. Kerr primarily reported to Tim Krause, Physical Security Branch Chief. However, each Wednesday, Mr. Kerr performed tasks assigned by Mr. Lewis.

36. When the issue of the tension created by being supervised and tasked by two supervisors (Mr. Lewis and Mr. Krause), Mr. Shebchuk stated that Mr. Kerr "needed to know [his] place." Mr. Kerr understood this statement to mean that, as a dark-skinned African American, he needed to learn that he was subordinate to Mr. Lewis.

37. In June 2016, Mr. Kerr was involuntarily transferred back to his old position at the NCR, and immediately held accountable for a faulty camera that failed to record a rock being thrown through a DHS office building.

38. Upon information and belief, two males (Caucasian, White) were aware of the faulty camera prior to the incident and should have, but did not, report it.  Neither was held responsible for the faulty camera, only Mr. Kerr.

39. Shortly after learning that he was not selected for the Supervisory Security Specialist position and being involuntarily transferred to the NCR, in June 2016, Mr. Kerr contacted his EEO specialist to file an informal EEO complaint.

40. In September 2016, Mr. Kerr sought a letter of recommendation from Mr. Lewis for the purpose of including it in an application for a detail assignment.  Initially, on September 22, 2016, Mr. Lewis stated that he would sign the letter if Mr. Kerr provided him a draft and stated he would get back to him on September 24, 2016.

41. As Mr. Lewis requested, Mr. Kerr provided a draft letter to him on September 22, 2016.  Since Mr. Lewis did not respond to Mr. Kerr on September 24, 2016, Mr. Kerr asked Mr. Lewis for the status of the letter.  In response, Mr. Lewis informed Mr. Kerr that he was refusing to sign the letter because he "felt uncomfortable" doing so and "needed to make inquiries."

42. After Mr. Kerr questioned Mr. Lewis' refusal, he stated he was refusing to sign the letter due to Mr. Kerr allegedly having deficient performance.  Prior to this meeting, Mr. Lewis did not counsel, or in any way, make Mr. Kerr aware that his performance was deficient, which it was not.

43. Upon information and belief, Mr. Lewis never contacted anyone, including Mr. Minor, who had supervised Mr. Kerr from fall 2015 to April 2016, or Mr. Krause, to discuss Mr. Kerr's performance.

44. In September 2016, Mr. Lewis verbally counseled Mr. Kerr and provided him with a written reprimand for "use of racial comments in the work place" after Mr. Kerr complained after a team meeting that another African American was "being treated differently because he was 'black.'"

45. In October 2016, Mr. Lewis issued Mr. Kerr an undeserved low performance evaluation, which was a rating of 3.0 and "achieved expectations." The performance evaluation covered the time period of October 1, 2015 to September 30, 2016 (FY 2016).

46. Prior to issuing the undeserved performance evaluation, Mr. Lewis did not consult with Mr. Minor, who supervised Mr. Kerr for the majority of the rating period, or any of the other individuals who oversaw Mr. Kerr's work while he was detailed to them.

47. For the years prior, when Mr. Kerr was not supervised by Mr. Lewis, he received a score anywhere from 4.0 to 4.8 and "achieved excellence."

48. Since early October 2016, Mr. Kerr has been detailed to the Office on Information and Technology ("OIT") Branch, where he works under the supervision of Shane Barney. However, Christopher Lewis continues to be Mr. Kerr's official first-level supervisor and Samuel Shebchuk continues to be his second line supervisor.

49. Upon information and belief, two other EEO complaints have been filed against Mr. Shebchuk, which the Agency subsequently settled.

50. Upon information and belief, similarly situated employees of a different protected class are not subjected to the same foregoing hostile work environment and unlawful treatment.

**CAUSES OF ACTION**

**COUNT ONE**
**Title VII of the Civil Rights Act of 1964, as amended,**
**42 U.S.C. § 2000e,** *et seq***.**
**(Employment Discrimination on the Basis of Race and Color)**

51. Plaintiff incorporates all information and allegations contained in the preceding paragraphs as if fully set forth herein.

52. Plaintiff is a dark-skinned African American and, as such, is a member of a protected class.

53. As an employee of Defendant, Plaintiff was treated differently and subjected to different terms and conditions of employment in comparison to non-African American and/or light-skinned employees that Defendant employed.

54. Defendant has subjected Plaintiff to adverse employment actions, including the adverse actions alleged herein, and otherwise deprived Plaintiff of his rights enjoyed by his non-African American and/or light-skinned coworkers.

55. Defendant's unlawful conduct negatively impacted the terms, conditions and privileges of Plaintiff's employment because it resulted in loss of income, promotional opportunities and other disadvantages in the workplace.

56. The reason(s) proffered for Defendant's unlawful conduct, including the selectees being more qualified than Plaintiff, are not legitimate and would be pretext for its discriminatory conduct.

57. Defendant knew that Plaintiff is a dark-skinned African-American prior to the non-selection described throughout this Complaint.

58. Plaintiff has been treated differently and subjected to different terms and conditions of his employment due to his race (African-American) and/or color (dark-skinned).

59. Defendant has limited, segregated and classified Plaintiff in a way that deprives his of employment opportunities and otherwise adversely affects his status as an employee because of his race (African-American) and/or color (dark-skinned).

60. Other employees who were similarly situated, but members of a different protected class than Plaintiff, have been treated more favorably than Plaintiff in the terms and conditions of employment.

61. Defendant's conduct has been intentional, deliberate, willful, malicious, reckless and in callous disregard of the rights of Plaintiff because of his race (African-American) and/or color (dark-skinned).

62. As a direct and proximate cause of Defendant's conduct alleged in this Complaint, Plaintiff suffered, and continues for suffer, from harm, injury and monetary damages – including but not limited to past and future loss of income, benefits, career opportunities, expenses and costs – and is entitled to all available legal and equitable remedies.

63. Plaintiff was humiliated, embarrassed and made to endure a great amount of pain and suffering, and his injury is permanent in nature.  Defendant's treatment and actions were ongoing.

64. Plaintiff has incurred lost wages, loss of reputation and loss of career opportunity now and into the future, and all of the other losses stated without Plaintiff contributing in any way thereto.

**WHEREFORE**, Plaintiff respectfully prays that this Honorable Court;

a. Award compensatory damages as permitted by statute;

b. Award lost wages (back pay / front pay) with interest;

c. Award Plaintiff be assigned to the same or substantially position;

d. Award reasonable attorney fees, costs, and expenses incurred for this action;

e. Order Defendant to institute a policy and procedure to be implemented against discrimination;

f. Equal Employment Opportunity training for Defendant and the supervisory officials at issue herein;

g. Supervisory training for the supervisors at issue herein;

h. Award equitable, declaratory, and injunctive relief; and

i. Award such other and further relief as this Honorable Court deems just and proper.

**COUNT TWO**
**Title VII of the Civil Rights Act of 1964, as amended,**
**42 U.S.C. § 2000e,** *et seq.*
**(Employment Discrimination / Reprisal Based on Prior Protected EEO Activity)**

65. Plaintiff incorporates all information and allegations contained in the preceding paragraphs as if fully set forth herein.

66. Plaintiff regularly complained about the discriminatory treatment that he and other African Americans were experiencing.

67. On June 3, 2016, Plaintiff contacted the Agency regarding the discriminatory treatment that he was being subjected to. He formally complained to the Agency on or

11

around September 1, 2016, which was amended on December 15, 2016 and January 5, 2017 to include further acts of retaliation and hostile work environment.

68. After the issuance of the Report of Investigation, Plaintiff sought relief from the United States Equal Employment Opportunity Commission.

69. Soon after complaining, Plaintiff was subjected to undeserved low performance evaluation for FY 2016, was denied a letter of recommendation, falsely accused of having deficient performance, as well as other adverse actions alleged throughout this Complaint.

70. Defendant subjected Plaintiff to the aforementioned adverse employment actions because of his participation and opposition to the unlawful and discriminatory employment practices of Defendant in violation of Title VII.

71. Defendant, including Plaintiff's supervisors, knew of Plaintiff's engagement in protected activity prior to engaging in the aforementioned adverse actions when they were informed by Plaintiff, by an EEO representative, or otherwise engaged in the complaint process.

72. The adverse retaliatory actions to which Plaintiff has been subjected are a direct result of Plaintiff having previously engaged in protected EEO activity.

73. Similarly situated employees (no known prior EEO activity) were not subjected to the same, similar or any adverse treatment.

74. The adverse treatment that Plaintiff was being subjected to by Defendant was obvious to his co-workers who could and did observe the distress that it caused Plaintiff.

75. Defendant's unlawful conduct has created a climate of fear and intimidation for Plaintiff and other employees, which creates a chilling effect in violation of Title VII.

76. The reasons proffered by Defendant for its unlawful conduct are pretextual and Defendant cannot further offer any legitimate reason for its unlawful conduct.

77. Defendant's unlawful conduct negatively impacted the terms, conditions and privileges of Plaintiff's employment.

78. Defendant's retaliatory conduct has been intentional, deliberate, willful, malicious, reckless and in callous disregard of the rights of Plaintiff because of his participation and opposition to Defendant's discriminatory conduct.

79. As a direct and proximate cause of Defendant's conduct alleged in this Complaint, Plaintiff suffered, and continues for suffer, from harm, injury and monetary damages – including but not limited to past and future loss of income, benefits, career opportunities, expenses and costs – and is entitled to all available legal and equitable remedies.

80. Plaintiff was humiliated, embarrassed and made to endure a great amount of pain and suffering, and his injury is permanent in nature.  Defendant's treatment and actions were ongoing.

81. Plaintiff has incurred lost wages, loss of reputation and loss of career opportunity now and into the future, and all of the other losses stated without Plaintiff contributing in any way thereto.

**WHEREFORE**, Plaintiff respectfully prays that this Honorable Court;

    a. Award compensatory damages as permitted by statute;

    b. Award lost wages (back pay / front pay) with interest;

    c. Award Plaintiff be assigned to the same or substantially position;

    d. Award reasonable attorney fees, costs, and expenses incurred for this action;

  e. Order Defendant to institute a policy and procedure to be implemented against discrimination;

  f. Equal Employment Opportunity training for Defendant and the supervisory officials at issue herein;

  g. Supervisory training for the supervisors at issue herein;

  h. Award equitable, declaratory, and injunctive relief; and

  i. Award such other and further relief as this Honorable Court deems just and proper.

## COUNT THREE
### Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq*.
### (Hostile Work Environment)

82. Plaintiff incorporates all information and allegations contained in the preceding paragraphs as if fully set forth herein.

83. As a result of Plaintiff's protected status and participation in protected activity, Plaintiff's supervisors routinely engaged in persistent pattern of severe and pervasive harassment as set forth herein, which created a hostile and offensive workplace environment.

84. Plaintiff was regularly and continually subjected to harassing conduct that included unfair scrutiny of his work performance, being disrespected by his supervisors, subjected to false accusations, stigmatized, which created a hostile and abusive work environment.

85. Plaintiff believes that he was subjected to a hostile work environment based on his race (African American), color (dark skinned) and because of his participation in protected activity and opposition to discriminatory conduct.

86. Defendant's unlawful conduct was unwelcome.

87. Defendant's deliberate conduct of the adverse actions referred to throughout this Complaint created a hostile and abusive work environment.

88. Plaintiff was subjected to harassment because his protected status, and it unreasonably interfered and affected a term, condition, or privilege of Plaintiff's employment.

89. Defendant knew or should have known of the harassment. Defendant failed to adequately investigate the harassment and took no effective, immediate or remedial action. Despite Plaintiff's complaints, the harassment continued unabated and, despite being repeatedly detailed, was forced to continue reporting to his harasser.

90. By failing to take appropriate and effective remedial action against Plaintiff's supervisors, Defendant acted with malice or with reckless or callous indifference to Plaintiff's complaints.

91. As a direct and proximate cause of Defendant's conduct alleged in this Complaint, Plaintiff suffered, and continues for suffer, from harm, injury and monetary damages – including but not limited to past and future loss of income, benefits, career opportunities, expenses and costs – and is entitled to all available legal and equitable remedies.

92. Plaintiff was humiliated, embarrassed and made to endure a great amount of pain and suffering, and his injury is permanent in nature. Defendant's treatment and actions were ongoing.

93. Plaintiff has incurred lost wages, loss of reputation and loss of career opportunity now and into the future, and all of the other losses stated without Plaintiff contributing in any way thereto.

**WHEREFORE**, Plaintiff respectfully prays that this Honorable Court;

a. Award compensatory damages as permitted by statute;

b. Award lost wages (back pay / front pay) with interest;

c. Award Plaintiff be assigned to the same or substantially position;

d. Award reasonable attorney fees, costs, and expenses incurred for this action;

e. Order Defendant to institute a policy and procedure to be implemented against discrimination;

f. Equal Employment Opportunity training for Defendant and the supervisory officials at issue herein;

g. Supervisory training for the supervisors at issue herein;

h. Award equitable, declaratory, and injunctive relief; and

i. Award such other and further relief as this Honorable Court deems just and proper.

## EQUITABLE RELIEF

94. Plaintiff hereby incorporates, by reference hereto, the facts, law, and/or allegations contained within the preceding paragraphs, as fully set forth herein.

95. Because of the actions alleged herein, the continued employment of the supervisors at issue herein without training in equal employment opportunity law, rules and regulations, present clear and present dangers to the employees of Defendant and could result in further illegal actions on the part of Defendant, by and through their respective agents, servants and employees.

WHEREFORE, Plaintiff respectfully prays that this Honorable Court:

a. Order Defendant to institute a policy and procedure to be implemented against discrimination;

    b.    Equal Employment Opportunity training for Defendant and the supervisory officials at issue herein;

    c.    Supervisory training for the supervisors at issue herein; and

    d.    Such other and further relief as this Court deems just and proper.

## JURY DEMAND

96. Pursuant to Fed. R. Civ. P. 38, Plaintiff demands trial by jury on all issues so triable.

Respectfully submitted,

*A Marques Pitre, Esq.*
_____
A. MARQUES PITRE, Partner
Pitre & Associates, LLC.
Ronald Reagan Building and
International Trade Center
1300 Pennsylvania Avenue, N.W., Suite 700
Washington, DC 20004
Phone: 202-204-3006
Direct: 202-840-6797
Email: ampitre@ampitreassociates.com

*Counsel for Plaintiff*